FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 08, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN M.,[1] | No. 2:20-cv-00338-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 20, 21 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 20, 21. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 20, and grants Defendant's motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

3    1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

4    rational interpretation, [the court] must uphold the ALJ's findings if they are

5    supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

6    F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

7    ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

8    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

9    *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

10   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

11   *Sanders*, 556 U.S. 396, 409-10 (2009).

12                          **FIVE-STEP EVALUATION PROCESS**

13        A claimant must satisfy two conditions to be considered "disabled" within

14   the meaning of the Social Security Act.  First, the claimant must be "unable to

15   engage in any substantial gainful activity by reason of any medically determinable

16   physical or mental impairment which can be expected to result in death or which

17   has lasted or can be expected to last for a continuous period of not less than twelve

18   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

19   impairment must be "of such severity that he is not only unable to do his previous

20   work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

ORDER - 4

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

ORDER - 5

the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 24, 2017, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of August 1, 2017. Tr. 15, 63-64, 248-55. The applications were denied initially and on reconsideration. Tr. 127-33, 137-58. Plaintiff appeared before an administrative law judge (ALJ) on October 2, 2019. Tr. 32-62. On November 7, 2019, the ALJ denied Plaintiff's claim. Tr. 12-31.

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff, who meets the insured status requirements through March 31, 2021, has not engaged in substantial gainful activity since August 1, 2017.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: left shoulder degenerative joint disease; lumbar degenerative disc disease; left cubital tunnel syndrome; obesity; depression; anxiety; personality disorder; attention deficit hyperactivity disorder (ADHD); and post-traumatic stress disorder (PTSD).  Tr. 17.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18-19.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> He can never climb ladders, ropes, or scaffolds; and can occasionally crawl, reach in all directions with the left non-dominant arm, and push and/or pull with the upper left extremity.  [Plaintiff] can understand and perform simple routine repetitive tasks and have occasional superficial contact with the public and superficial workers which means he can perform no teamwork.[3]

---

[3]  There are two discrepancies in the RFC that appear to be scrivener's errors.  Tr. 20.  The hearing transcript shows that the ALJ provided two variations of one hypothetical to the VE.  Tr. 57-58.  The first version of the hypothetical is the same as written in the decision, except the ALJ said "understand, *remember*, and perform simple, routine, repetitive tasks" [emphasis added] and the ALJ said that

ORDER - 7

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 24.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there

_____

the individual would have occasional superficial contact with the public and superficial contact with coworkers, not "superficial workers," as written in the decision.  *Id.*  The second hypothetical was the same, except with the addition of absences from the workstation, which the VE said would result in inability to sustain competitive work.  Tr. 58.  As she issued a denial, it is clear that the ALJ intended to use her first hypothetical. The scrivener's errors do not change the outcome of the decision, the meaning remains clear, and these are found to be harmless.  *See Bamforth v. Colvin,*  C13–5618BHS, 2014 WL 2711827, at *2–3 (W.D. Wash. June 16, 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination"); *Molina*, 674 F.3d at 121 ("Even when an agency explains its decision with less than ideal clarity we must uphold it if the agency's path may reasonable be discerned." (internal quotation marks omitted)).

ORDER - 8

were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as mail clerk, office helper, and photocopier operator.  Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of August 1, 2017, through the date of the decision.  Tr. 26.

On July 22, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 20 at 2, 15-19.

ORDER - 9

# DISCUSSION

## A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in rejecting the opinions of examining psychologists Thomas Genthe, Ph.D., and Patrick Metoyer, Ph.D.  ECF No. 20 at 16.[4]  As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

_____

[4] In his opening brief, Plaintiff lists the first issue as whether the ALJ properly evaluated the medical opinion evidence from the treating, examining, and reviewing medical sources.  *See* ECF No. 20 at 2.  In the argument section Plaintiff lists only Dr. Genthe and Dr. Metoyer.  *See* ECF No. 20 at 2, 14-16.  Plaintiff failed to specifically and distinctly argue his claim of error concerning any other medical opinion evidence and has therefore waived his challenge to the other medical opinions, as discussed *infra*.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1115, 1161 n.2 (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

ORDER - 10

C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The parties disagree over whether Ninth Circuit case law continues to be controlling in light of the amended regulations, specifically whether the "clear and convincing" and "specific and legitimate" standards still apply. ECF No. 16 at 13-18; ECF No. 17 at 7-10. "It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of [an] ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ

provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis

of medical opinions, or some variation of those standards."  *Gary T. v. Saul*, No.

EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29,

2020) (citing *Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *3

(W.D. Wash. Apr. 9, 2020)).  "Nevertheless, the Court is mindful that it must defer

to the new regulations, even where they conflict with prior judicial precedent,

unless the prior judicial construction 'follows from the unambiguous terms of the

statute and thus leaves no room for agency discretion.'"  *Gary T.,* 2020 WL

3510871, at *3 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet

Services*, 545 U.S. 967, 981-82 (2005); *Schisler v. Sullivan*, 3 F.3d 563, 567-58 (2d

Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld

unless 'they exceeded the Secretary's authority [or] are arbitrary and

capricious.'").

    There is not a consensus among the district courts as to whether the "clear

and convincing" and "specific and legitimate" standards continue to apply.  *See,*

*e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash.

Nov. 10, 2020) (applying the specific and legitimate standard under the new

regulations); *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal.

Aug. 11, 2021) (stating the court defers to the new regulations); *Agans v. Saul*,

2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021) (concluding that the new

regulations displace the treating physician rule and the new regulations control); *Madison L. v. Kijakazi*, No. 20-CV-06417-TSH, 2021 WL 3885949, at \*4-6 (N.D. Cal. Aug. 31, 2021) (applying only the new regulations and not the specific and legitimate nor clear and convincing standard).  For the sake of consistency in this District, the Court adopts the rationale and holding articulated on the issue in *Emilie K. v. Saul*, No. 2:20-cv-00079-SMJ, 2021 WL 864869, \*3-4 (E.D. Wash. Mar. 8, 2021), *appeal docketed*, No. 21-35360 (9th Cir. May 10, 2021).  In *Emilie K.*, this Court held that the ALJ did not err in applying the new regulations over Ninth Circuit precedent, because the result did not contravene the Administrative Procedure Act's requirement that decisions include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record."  *Id.* at \*4 (citing 5 U.S.C. § 557(c)(A)). This rationale has been adopted in other cases with this Court.  *See, e.g., Jeremiah F. v. Kijakazi*, No. 2:20-CV-00367-SAB, 2021 WL 4071863, at \*5 (E.D. Wash. Sept. 7, 2021).  Nevertheless, it is not clear that the Court's analysis in this matter would differ in any significant respect under the specific and legitimate standard set forth in *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

     *1. Dr. Genthe*

        a. September 2017 Evaluation and Review by Dr. Sanchez

ORDER - 14

1    On September 1, 2017 Dr. Genthe conducted a psychological examination

2  and rendered an opinion on Plaintiff's functioning for DSHS benefits.  Tr. 375-85.

3  Dr. Genthe diagnosed Plaintiff with a panic disorder, agoraphobia, generalized

4  anxiety disorder, ADHD (combined presentation), intermittent explosive disorder,

5  other specified anxiety disorder, other specified depressive disorder (mild), other

6  specified personality disorder (with borderline features) and cannabis use disorder,

7  in sustained remission.  Tr. 378.  Dr. Genthe opined: Plaintiff has moderate

8  limitation in his ability to understand, remember and persist in tasks by following

9  very short and simple instructions, in his ability to perform activities within a

10  schedule, maintain regular attendance, and be punctual within customary

11  tolerances without special supervision, to learn new tasks and perform routine

12  tasks without special supervision, make simple work related decisions, be aware of

13  normal hazards and take appropriate precautions, ask simple questions or request

14  assistance, and to set realistic goals and plan independently; marked limitation in

15  his ability to understand, remember and persist in tasks by following detailed

16  instructions, adapt to changes in a routine work setting, and communicate and

17  perform effectively in a work setting; and severe limitation in his ability to

18  maintain appropriate behavior in a work setting.  Tr. 378-79.  Dr. Genthe further

19  opined Plaintiff's impairments overall have a marked severity rating, were

20  expected to last 9-12 months with treatment, and that vocational training or

services would minimize or eliminate barriers to employment.  Tr. 379.  He also explained that personality inventory testing "raised the question if the information [Plaintiff] provided verbally can be taken at face value."  *Id.*

On September 19, 2017, Dr. Phyllis Sanchez, Ph.D., reviewed Dr. Genthe's September 1, 2017 evaluation, and she also rendered an opinion on Plaintiff's mental health severity and functioning for eligibility for DSHS benefits.  Tr. 372-74.  She notes the same mental functional limitations as Dr. Genthe, using the same DSHS form, except she checked the box indicating Plaintiff has marked limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, adding this mental limitation in a row on the form that Dr. Genthe left blank.  Tr.  373, 379.  Dr. Sanchez opined Plaintiff's overall severity rating is a four and rated his functional symptoms four as well.[5] The ALJ did not find Dr Genthe's or Dr. Sanchez's September 2017 opinions persuasive.  Tr. 23.

First, the ALJ found Dr. Genthe's opinion was not consistent with his own mental status exam.  Tr. 23.  Consistency is one of the most important factors an

---

[5] While the questionnaire does not list the definitions of the numerical ratings, WAC 388-449-0035 provides the definition of the severity ratings, and defines a rating of four as marked.

ORDER - 16

1  ALJ must consider when determining how persuasive a medical opinion is.  20

2  C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is

3  with the evidence from other sources, the more persuasive the opinion is.  20

4  C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  While Dr. Genthe opined Plaintiff had

5  overall marked limitations, this is not consistent with his own objective findings on

6  mental status exam where he observed Plaintiff to be well groomed with good

7  hygiene, normal speech, and a cooperative and friendly attitude.  Tr. 380.  While

8  Dr. Genthe noted Plaintiff described his own mood as anxious and Dr. Genthe did

9  observe Plaintiff's nervous affect, he also observed Plaintiff's thought process was

10  normal, he was oriented, and his perception and memory were within normal

11  limits.  *Id.*  While his fund of knowledge was slightly limited, his concentration

12  appeared intact, and Dr. Genthe noted Plaintiff could spell the word world forward

13  and backward without mistake and could make change for a dollar.  *Id.*  While Dr.

14  Genthe observed Plaintiff had poor understanding of need for treatment and poor

15  level of social maturity, Dr. Genthe also indicated Plaintiff had a fair

16  understanding of the factors contributing to his illness.  Tr. 382.  Dr. Genthe

17  provides no explanation for how his findings translate into a marked severity

18  rating.  He also left portions of the form blank, including section "D. Clinical

19  Findings" where he was asked to list all mental health symptoms that affect the

20  individual's ability to work.  Tr. 378.  The ALJ reasonably found Dr. Genthe's

1  opinion was inconsistent with the generally unremarkable findings in his

2  evaluation.

3          Second, the ALJ found that the opinions of Dr. Genthe and Dr. Sanchez

4  were not "supported, by either Dr. Genthe's mental status exam or the longitudinal

5  record," and that both opinions were inconsistent with numerous unremarkable

6  mental status exams throughout the record, "indicating that Dr. Genthe may have

7  relied more on [Plaintiff's] presentation and statements (subjective complaints)

8  than objective findings." Tr. 23. Supportability is one of the most important

9  factors an ALJ must consider when determining how persuasive a medical opinion

10  is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more relevant objective

11  evidence and supporting explanations that support a medical opinion, the more

12  persuasive the medical opinion is. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

13  As discussed *supra* Dr. Genthe's mental status exam was unremarkable. Tr. 380-

14  82. Dr. Sanchez did not meet with Plaintiff to perform an evaluation or mental

15  status exam, and the only record she reviewed was Dr. Genthe's evaluation from

16  earlier that month. Tr. 372-74. Review of the record as a whole, however, reveals

17  generally normal mental status exams.

18          As noted by the ALJ, Plaintiff had normal mental status exams at multiple

19  office visits. Tr. 22-23, 398, 418, 425. Plaintiff argues that the ALJ relies on notes

20  from physical exams rather than mental exams. ECF No. 20 at 12, 16. However,

ORDER - 18

two of the three visits cited here by the ALJ were mental health appointments where a mental status exam was performed. Tr. 418, 425. For example, at a January 18, 2018 mental health appointment, upon mental status exam Plaintiff appeared groomed with good hygiene; his thought process was future oriented and organized; his mood was normal with congruent affect; his speech was normal, and his provider observed he was alert and oriented. Tr. 418. His provider also noted Plaintiff's report of only one panic attack in the last two weeks that was so brief he did not need to use any medication to control the symptoms. *Id.* At the February 1, 2018 mental health appointment cited by the ALJ, upon mental status exam Plaintiff's provider again observed he was groomed and had good hygiene; his thought process was future oriented and organized; his mood was again normal, and his affect was congruent; his speech was normal and he remained alert and oriented. Tr. 425. At a medication management appointment on the same day, the nurse practitioner noted Plaintiff's report he was doing "good" since restarting medication, and that his anxiety had decreased. Tr. 427. Upon mental status exam she observed Plaintiff had good hygiene and maintained eye contact well; he was calm and pleasant; his speech was animated but unpressured and his thought process was appropriate; he denied perceptual thought content disturbances; his affect was full, and his insight and judgement were fair to good. Tr. 428. Mental status exams performed at mental health appointments throughout 2018 and 2019

are similarly unremarkable.  *See, e.g.,* 410, 413, 422, 428, 435, 460, 462, 509-10, 514.

While Plaintiff was observed to be anxious at a mental health intake evaluation on October 4, 2017, and the clinician noted that he would "shut down" when she asked personal questions, she also observed him to be engaged and cooperative and noted his concentration was fair.  Tr. 443.  At that time, Plaintiff also reported he was also experiencing a period of homelessness and was staying with an ex-girlfriend.  Tr. 439.  He reported he was getting panic attacks due to worry and stressors, but also "because I am not comfortable at her house."  Tr. 439. By an appointment on October 16, 2017, however, although Plaintiff appeared anxious, he was observed to have good grooming and normal speech, and he was oriented, articulate, organized, and future focused.  Tr. 455.  The ALJ's finding that Dr. Genthe's and Dr. Sanchez's opinions were inconsistent with Dr. Genthe's own mental status exam and unsupported by the cited objective evidence from numerous mental status exams throughout the record is supported by substantial evidence.  *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

b.  July 2019 evaluation

Dr. Genthe met with Plaintiff for a second evaluation on July 29, 2019.  Tr. 557-566.  Dr. Genthe diagnosed Plaintiff with other specified depressive disorder,

ORDER - 20

mild; panic disorder; agoraphobia; generalized anxiety disorder; and ADHD, combined presentation.  Tr. 560.  Dr. Genthe opined Plaintiff had no or mild limitation in his ability to understand, remember, and persist in tasks by following very short and simple instructions and to make simple work-related decisions; moderate limitation in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, to learn new tasks and perform routine tasks without special supervision, to ask simple questions or request assistance, and to set realistic goals and plan independently; and marked limitation in his ability to understand, remember and persist in tasks by following detailed instructions, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and to complete a normal workday and workweek without interruptions from psychologically based symptoms.  Tr. 560-61.  Dr. Genthe opined Plaintiff's impairments overall had a marked severity rating, were expected to last 12 months with treatment, and that vocational training or services would minimize or eliminate barriers to employment.  Tr. 561.  The ALJ found Dr. Genthe's 2019 opinion unpersuasive, except to agree with the portions of the opinion that found Plaintiff had no to mild limitations.  Tr. 23.

The ALJ found that Dr. Genthe's opinion "again seems to rely more on [Plaintiff's] description of alleged symptoms than his presentation" and was not

1  supported by the objective record.  *Id.*  As discussed *supra*, Dr. Genthe's opinion is

2  not supported by the medical evidence as a whole, including mental status exams

3  by Plaintiff's treating mental health providers throughout the period at issue.

4  Similarly, Dr. Genthe's 2019 opinion is unsupported by his own mental status

5  exam and other findings on that day.  Tr. 23, 562-63.  Here, Dr. Genthe observed

6  Plaintiff appeared well groomed and had good hygiene, his speech was normal,

7  and he presented as generally open, cooperative, and friendly.  Tr. 562.  Plaintiff

8  reported his own mood as anxious, and Dr. Genthe noted Plaintiff appeared

9  nervous.  *Id.*  Although his thoughts reflected some depression and anxiety,

10  Plaintiff's thought process and content were normal, he was oriented, and his

11  perception and memory appeared within normal limits; his concentration and

12  abstract thought were also within normal limits, and his insight and judgement

13  were improved from the last evaluation.  Tr. 562-63.  Dr. Genthe observed

14  Plaintiff's level of social maturity (noted as willingness to respond to society

15  appropriately) was still poor.  *Id.*  Under clinical findings, Dr. Genthe noted

16  Plaintiff's report that "depression is present but does not cause him significant

17  emotional distress or impairment in functioning," and that while he experienced

18  symptoms of panic, Plaintiff reported this was limited to two to three times a week

19  for five to 30 minutes.  Tr. 559.  While Dr. Genthe opined that Plaintiff's

20  "symptoms have not improved to the point of him being able to resume normal

ORDER - 22

1   work activities" and "he is unlikely to function adequately, and/or consistently in a

2   work setting until his psychological symptoms have been managed more

3   effectively," he again noted that testing suggested some caution in interpreting

4   Plaintiff's evaluation as there was a possibility of distortion and potential

5   overrepresenting of the extent and degree of clinical symptoms and related

6   impairment in certain areas.  Tr. 564-65.

7        The ALJ's finding that Dr. Genthe's 2019 opinion was not supported by the

8   record, including his own mental status exam and other findings is supported by

9   substantial evidence.  *See Holohan*, 246 F.3d at 1202; *Bray*, 554 F.3d at 1228.

10        c. Dr. Gilbert

11        The ALJ found Dr. Genthe and Dr. Sanchez's opinions less persuasive than

12   the opinion of Dr. Gilbert.  Tr. 24.  On August 6, 2018, Dr. Gilbert opined Plaintiff

13   retains the capacity to carry out simple one to three step instructions, maintain

14   concentration, persistence, and pace for up to two hours continuously, maintain

15   adequate attendance, and complete a normal workday/workweek within normal

16   tolerances of a competitive workplace; he retains the capacity to interact with

17   others on an occasional, superficial basis; and retains the ability to accept

18   instructions from a supervisor; and that he will have occasional difficulties with

19   adapting to change, but will be able to adapt to normal, routine changes in a

20   competitive workplace within normal tolerances.  Tr. 105-07, 122-24.

1    The ALJ found Dr. Gilbert's opinion more persuasive than Dr. Genthe's and

2    Dr. Sanchez's opinions because it was consistent with the overall medical record

3    and supported by objective findings.  Tr. 24.  Consistency and supportability are

4    the two most important factors when considering the persuasiveness of medical

5    opinions.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As discussed *supra,* the

6    ALJ found Dr. Genthe's and Dr. Sanchez's opinions inconsistent with the objective

7    medical evidence including Dr. Genthe's own mental status exams on two

8    occasions, and the record as a whole including findings from multiple mental

9    health treatment records.  This reason was supported by substantial evidence.  *See*

10   *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).

        *2.  Dr. Metoyer*

12       On June 18, 2018, Dr. Metoyer conducted a psychological examination and

13   rendered an opinion on Plaintiff's functioning.  Tr. 465-69.  Dr. Metoyer diagnosed

14   Plaintiff with PTSD; a panic disorder; major depressive disorder, (recurrent,

15   moderate); ADHD; and an unspecified personality disorder (rule out intermittent

16   explosive disorder) by history.  Tr. 468-69.  He opined that Plaintiff appears to

17   have the ability to reason and understand, and has some adaption skills; his

18   memory is intact; his ability to sustain concentration and persistence are mildly

19   impaired; his ability to interact with co-workers and the public is likely moderately

20   impaired; his ability to maintain regular attendance in the workplace is moderately

ORDER - 24

impaired due to PTSD, anxiety, and mood symptoms and tendency to isolate

himself from others; his ability to complete a normal work day or work week

without interruption from PTSD and anxiety and mood symptoms is likely

moderately impaired; and his ability to deal with the usual stress encountered in the

work place is moderately impaired if it involves persistent activity, complex tasks,

task pressure, and interaction with other individuals.  Tr. 469.  The ALJ found this

opinion persuasive.  Tr. 23.

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Metoyer,

ECF No. 20 at 6-7, 16, however, the Court finds the ALJ did not reject this

opinion.  Tr. 23.  The ALJ explained Dr. Metoyer's opinion was based on a

thorough in person interview and mental status exam, which supported his

functional assessment, and that his opinion was generally consistent with the

overall record.  *Id.*  Consistency is one of the most important factors an ALJ must

consider when determining how persuasive a medical opinion is.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is with the

evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2).  Upon mental status exam, Dr. Metoyer found

Plaintiff anxious, irritable, and somewhat uncooperative, noting that he provided

short answers and "refused to answer some questions."  Tr. 467.  Dr. Metoyer

reported that Plaintiff described his own mood as irritable, frustrated, anxious,

depressed but "sometimes ok." *Id.*  Dr. Metoyer observed Plaintiff's was oriented, however, and his thought, speech, memory, concentration, insight and judgement were all within normal limits.  Tr. 467-68.  The ALJ found Dr. Metoyer's opinion consistent with his own exam and the overall record.  Even if this evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The ALJ found this opinion persuasive, and the ALJ's findings are supported by substantial evidence.

Plaintiff failed to specifically and distinctly argue his claim of error concerning the opinions of Dr. Fitterer and Dr. Massoud, therefore Plaintiff has waived his arguments concerning these medical opinions.  The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  The Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Independent Towers v. Washington,* 350 F.3d 925, 929 (9th Cir.2003) (quoting *Greenwood v. Fed. Aviation Admin.,* 28 F.3d 971, 977 (9th Cir.1994)).  Rather, the Court will "review only issues which are argued specifically and distinctly." *Independent Towers*, 350 F.3d at 929.  When a claim of error is not argued and explained, the argument is waived.  *See id.* at 929-30 (holding that party's

ORDER - 26

argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.,* 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding an allegation of error was "too undeveloped to be capable of assessment").

Plaintiff mentions the opinions of Dr. Fitterer and Dr. Massoud in his brief, specifically that the ALJ failed to include limitations from these providers in the ALJs hypothetical to the vocational expert. ECF No. 20 at 18. Plaintiff alleges that "Dr. Massoud opined Plaintiff needed a desk job" and "Dr. Fitterer said Mr. Medeiros could not use the left arm for reaching in any direction and overhead." *Id.* However, Plaintiff fails to provide any reasoning or argument or address the ALJ's consideration of these opinions. *See* ECF No. 20 at 10, 18-19. An opening brief must contain the Plaintiff's contentions, the reasons for the contentions, and citations to the authority and portions of the record on which Plaintiff relies. *See Independent Towers*, 350 F.3d at 930. Here, Plaintiff mentions limitations provided by Dr. Fetterer and Dr. Massoud but does not explain the ALJ's discussion of these medical opinions, how or why the ALJ erred, or provide evidence the ALJ mischaracterized or misconstrued the opinions. By failing to provide any reasons for his contentions and not citing to any records that support his contentions, Plaintiff waived the arguments.

1    Given this waiver, the Court declines to address Plaintiff's challenge to the

2    ALJ's medical opinion analysis for Dr. Fitterer and Dr. Massoud.

3    **B. Plaintiff's Symptom Claims**

4    Plaintiff contends the ALJ erred by failing to rely on reasons that were clear

5    and convincing in discrediting his symptom claims.  ECF No. 20 at 16-17.  An

6    ALJ engages in a two-step analysis to determine whether to discount a claimant's

7    testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

8    "First, the ALJ must determine whether there is objective medical evidence of an

9    underlying impairment which could reasonably be expected to produce the pain or

10    other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

11    "The claimant is not required to show that [the claimant's] impairment could

12    reasonably be expected to cause the severity of the symptom [the claimant] has

13    alleged; [the claimant] need only show that it could reasonably have caused some

14    degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

15    Second, "[i]f the claimant meets the first test and there is no evidence of

16    malingering, the ALJ can only reject the claimant's testimony about the severity of

17    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18    rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

19    omitted).  General findings are insufficient; rather, the ALJ must identify what

20    symptom claims are being discounted and what evidence undermines these claims.

ORDER - 28

1  *Id.* (quoting *Lester,* 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to

2  sufficiently explain why it discounted claimant's symptom claims)).  "The clear

3  and convincing [evidence] standard is the most demanding required in Social

4  Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting

5  *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

6         Factors to be considered in evaluating the intensity, persistence, and limiting

7  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

8  duration, frequency, and intensity of pain or other symptoms; 3) factors that

9  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

10  side effects of any medication an individual takes or has taken to alleviate pain or

11  other symptoms; 5) treatment, other than medication, an individual receives or has

12  received for relief of pain or other symptoms; 6) any measures other than treatment

13  an individual uses or has used to relieve pain or other symptoms; and 7) any other

14  factors concerning an individual's functional limitations and restrictions due to

15  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

16  404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

17  individual's record," "to determine how symptoms limit ability to perform work-

18  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

19         The ALJ found that Plaintiff's medically determinable impairments could

20  reasonably be expected to cause the alleged symptoms, but that Plaintiff's

ORDER - 29

1    statements concerning the intensity, persistence, and limiting effects of his

2    symptoms were not entirely consistent with the evidence.  Tr. 20-21.

3        *1. Inconsistent Objective Medical Evidence*

4        The ALJ found Plaintiff's symptom claims were inconsistent with the

5    objective medical evidence.  Tr. 21-22.  An ALJ may not discredit a claimant's

6    symptom testimony and deny benefits solely because the degree of the symptoms

7    alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

8    F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

9    1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

10    However, the objective medical evidence is a relevant factor, along with the

11    medical source's information about the claimant's pain or other symptoms, in

12    determining the severity of a claimant's symptoms and their disabling effects.

13    *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

14        While Plaintiff described ongoing left shoulder, arm, and back issues, the

15    ALJ noted records show generally mild findings upon physical exam.  Tr. 21.  The

16    ALJ noted that in January 2018 Plaintiff had no tenderness to palpation in his left

17    shoulder and full active range of motion.  Tr. 21, 404.  An ultrasound of his left

18    shoulder in February 2018 was normal and an x-ray of his left shoulder in May

19    2018 was negative.  Tr. 408, 534-35.  The ALJ acknowledged Plaintiff had mild

20    tenderness to palpation upon exam in in February 2019, and that his shoulder joint

1  appeared to "pop out of alignment" when rotated; records show an MRI was

2  recommended.  Tr. 21, 576, 578.  Plaintiff testified he was unable to get a

3  traditional MRI due to feeling claustrophobic and is trying physical therapy first

4  and waiting until he can get an open MRI.  Tr. 48, 53.  In October 2019 Plaintiff

5  told his provider he thought his arm and left shoulder joint pain was related to how

6  he sat when playing computer games.  Tr. 542, 547.  While Plaintiff has been

7  diagnosed with cubital tunnel syndrome, the ALJ noted that in January 2019

8  Plaintiff's sensation to light touch in his hands remained intact upon exam.  Tr. 21,

9  570.  The only treatment recommended at that time was an elbow brace and to stop

10  leaning on the table when he played online games, and Plaintiff reported

11  improvement by the next month.  Tr. 21, 570, 574.  Although he reports neck and

12  back pain, and the ALJ noted he had some tenderness to palpitation over the

13  paraspinal muscles bilaterally upon physical exam in January 2018, the ALJ also

14  noted he had normal muscle tone and strength and straight leg raises were negative

15  bilaterally at that exam.  Tr. 21, 389-90.  The ALJ noted x-rays of Plaintiff's

16  lumbar spine in 2018 showed moderate degenerative changes but were otherwise

17  unremarkable and x-rays of his cervical spine were normal.  Tr. 21, 393-94.

18      While Plaintiff alleges significant limitations from mental health issues

19  including panic attacks, the ALJ noted generally unremarkable mental status

20

ORDER - 31

exams, as described in-depth *supra*, and the ALJ noted Plaintiff's symptoms were reduced with medication. Tr. 22, 418, 422, 425, 428.

Plaintiff argues the ALJ "cherry picked irrelevant inconsistencies" that were inconsistent with the record as a whole. ECF No. 20 at 17.  Defendant argues Plaintiff asserts without citation that the ALJ cherry picked the record, and that Plaintiff's bare assertion of error is not enough to overturn the ALJ's reasonable finding.  ECF No. 21 at 17.  This is correct, as Plaintiff fails to provide any examples to support his argument, and the ALJ pointed to multiple inconsistencies. Further, the ALJ's finding that Plaintiff's report of symptoms was not entirely consistent with the objective medical evidence was reasonable.  This was a clear and convincing reason, when combined with the other reasons offered, to discount Plaintiff's symptom reports.

### 2. Improvement with Treatment

The ALJ found Plaintiff's symptom allegations were inconsistent with Plaintiff's improvement with treatment.  Tr. 22.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti,* 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  The ALJ notes Plaintiff reported improvement in mood

ORDER - 32

symptoms when he was taking medication regularly.  Tr. 22, 413, 425, 428.   In January 2018 he reported he was able to recover from a panic attack using coping skills, was not having panic attacks because he was having so much fun making a YouTube channel, and that he was stable and medications were working well.  Tr. 410, 422.  In February 2018 he reported his anxiety and irritability had improved since restarting Trintellix and he had not needed diazepam for breakthrough anxiety for a few weeks; he reported he was also trying to socialize and make positive connections.  Tr. 427-28.

On this record, the ALJ reasonably found Plaintiff's symptoms when treated were not as severe as Plaintiff claimed.  This was a clear and convincing reason to discount Plaintiff's symptom reports.

### 3. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with his symptom claims.  Tr. 19-22.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when

1  the claimant reports participation in everyday activities indicating capacities that

2  are transferable to a work setting" or when activities "contradict claims of a totally

3  debilitating impairment." *Molina*, 674 F.3d at 1112-13.

4        The ALJ found Plaintiff's activities demonstrate he can maintain

5  concentration and pace for at least simple tasks. Tr. 20. The ALJ noted Plaintiff

6  requested a bus pass so that he could get to his appointments, and that he was able

7  to perform personal care and hygiene, walk his dog, and do housework. Tr. 19,

8  387, 410. Plaintiff testified he spends his days playing computer games and the

9  ALJ noted Plaintiff's report in 2018 that he played a lot of online games

10 throughout the day. Tr. 21, 49, 567-68. The ALJ noted Plaintiff's report in

11 February 2018 that he was working on creating a YouTube channel with an online

12 friend, and that this was helping him manage his anxiety and anger symptoms. Tr.

13 22, 425. In January 2018, he reported he was living with an older couple and

14 helping around the house with chores and buying groceries. Tr. 412. In March

15 2018, he reported spending a lot of time with his girlfriend. Tr. 435. In December

16 2018, he reported he liked to cook and was cooking that night for people he lived

17 with; he reported hobbies including gaming. Tr. 515. On this record, the ALJ

18 reasonably concluded that Plaintiff's activities of daily living were inconsistent

19 with Plaintiff's symptom claims, particularly as it related to his ability to

20 concentrate. This finding is supported by substantial evidence and was a clear and

ORDER - 34

1  convincing reason to discount Plaintiff's symptom complaints.  Plaintiff is not

2  entitled to remand on these grounds.

3  **C. Step Five Analysis**

4      Plaintiff argues the ALJ erred at step five.  ECF No. 20 at 17-20.  At step

5  five of the sequential evaluation analysis, the burden shifts to the Commissioner to

6  establish that 1) the claimant can perform other work, and 2) such work "exists in

7  significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2),

8  416.960(c)(2); *Beltran*, 700 F.3d at 389.  In assessing whether there is work

9  available, the ALJ must rely on complete hypotheticals posed to a vocational

10 expert.  *Nguyen,* 100 F.3d at 1467.  The ALJ's hypothetical must be based on

11 medical assumptions supported by substantial evidence in the record that reflects

12 all of the claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.

13 2001).  The hypothetical should be "accurate, detailed, and supported by the

14 medical record."  *Tackett*, 180 F.3d at 1101.

15     The hypothetical that ultimately serves as the basis for the ALJ's

16 determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

17 assessment, must account for all the limitations and restrictions of the claimant.

18 *Bray*, 554 F.3d at 1228.  As discussed above, the ALJ's RFC need only include

19 those limitations found credible and supported by substantial evidence.  *Bayliss*,

20 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of

ORDER - 35

1  the limitations that the ALJ found credible and supported by substantial evidence

2  in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's

3  limitations, then the expert's testimony has no evidentiary value to support a

4  finding that the claimant can perform jobs in the national economy."  *Id*.  However,

5  the ALJ "is free to accept or reject restrictions in a hypothetical question that are

6  not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973

7  (9th Cir. 2006).  Therefore, the ALJ is not bound to accept as true the restrictions

8  presented in a hypothetical question propounded by a claimant's counsel if they are

9  not supported by substantial evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756-

10  57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  A

11  claimant fails to establish that a step five determination is flawed by simply

12  restating an argument that the ALJ improperly discounted certain evidence, when

13  the record demonstrates the evidence was properly rejected.  *Stubbs-Danielson*,

14  539 F.3d at 1175-76.

15       Plaintiff contends the ALJ erred by failing to provide limitations for all of

16  Plaintiff's impairments in the RFC and the hypothetical to the vocational expert.

17  ECF No. 20 at 17-20.  However, Plaintiff's argument is based entirely on the

18  assumption that the ALJ erred in his analysis of the medical opinions.  As

19  addressed *supra*, the ALJ properly assessed the medical opinion evidence of Dr.

20  Genthe, Dr. Metoyer and the state agency psychological consultant, and Plaintiff

1  has waived arguments concerning any other medical opinion evidence.

2     For reasons discussed throughout this decision, the ALJ's consideration of

3  the medical opinion evidence is legally sufficient and supported by substantial

4  evidence.  The ALJ has the discretion to evaluate and weigh the evidence and the

5  Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's

6  analysis.  The ALJ did not err in assessing the RFC or finding Plaintiff capable of

7  performing work existing in the national economy, and the RFC adequately

8  addresses the medical opinions in this record.

9     Plaintiff is not entitled to remand on these grounds.

10                              **CONCLUSION**

11     Having reviewed the record and the ALJ's findings, the Court concludes the

12  ALJ's decision is supported by substantial evidence and free of harmful legal error.

13  Accordingly, **IT IS HEREBY ORDERED**:

14     1. The District Court Executive is directed to substitute Kilolo Kijakazi as

15  Defendant and update the docket sheet.

16     2. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

17     3. Defendant's Motion for Summary Judgment, **ECF No. 21**, is

18  **GRANTED**.

19     4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

20

ORDER - 37

1    The District Court Executive is directed to file this Order, provide copies to

2  counsel, and **CLOSE THE FILE.**

3    DATED October 8, 2021.

4              *s/Mary K. Dimke*
              MARY K. DIMKE
5        UNITED STATES MAGISTRATE JUDGE

ORDER - 38